## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HAROLD KENNETH EDGERTON,
Plaintiff,

v.                                                    CASE NO.:  **8:25-cv-03278**

HILLSBOROUGH COUNTY, FLORIDA,
a political subdivision of the State of Florida,
Defendant.
_____/

## COMPLAINT

Plaintiff, HAROLD KENNETH "H.K." EDGERTON, by and through undersigned counsel, sues Defendant, Hillsborough County, Florida, under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments arising from Plaintiff's viewpoint-based expulsion from a public Veterans Day ceremony at Hillsborough County Veterans Memorial Park on November 11, 2025, and alleges:

### INTRODUCTION

1.     This civil-rights action arises from Hillsborough County's expulsion of H.K. Edgerton—a U.S. Army veteran—from a public Veterans Day ceremony on November 11, 2025, solely because he wore a Confederate uniform and carried a historical Confederate flag; a county-directed security officer employed by the county stated these were the reasons while he was being physically removed.

2.     The County's actions constitute viewpoint discrimination in a public forum, and an unconstitutional prior restraint on protected expression under the First and Fourteenth Amendments. Because Plaintiff was a member of the public

1

and located in the public area, the County cannot justify its conduct under the government-speech doctrine.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3); this action arises under the U.S. Constitution and 42 U.S.C. § 1983.

4.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events occurred in Hillsborough County, within this District and Division.

## PARTIES

5.     Plaintiff H.K. Edgerton is a citizen and veteran residing in North Carolina who attended the subject county ceremony as an invited guest.

6.     Defendant Hillsborough County, Florida ("County") is a political subdivision that owns, funds, and manages Veterans Memorial Park, organizes County-sponsored events there, and employs or contracts with security personnel. At all relevant times, County personnel and agents acted under color of state law.

## STATEMENT OF FACTS

7.     Hillsborough County publicly announced the 61st Annual Hillsborough Veterans Day Tribute at Hillsborough County Veterans Memorial Park and invited "veterans of all wars" and members of the public to attend and participate.

8.     H.K. Edgerton learned of the event from Miss Lunelle, who planned to attend and place a wreath on behalf of her United Daughters of the Confederacy

2

chapter. She relayed that the County's invitation welcomed "all veterans of all wars."

9.    In accordance with his decades-long participation in veterans commemorations, Edgerton donned a Confederate soldier's uniform—symbolic attire he wears to honor Southern veterans—and traveled to Veterans Memorial Park on November 11, 2025.

10.    Edgerton and Miss Lunelle arrived at approximately 9:35 a.m. and were directed where to park so that she could place the wreath.

11.     They removed the wreath and stand from the vehicle and proceeded toward the pavilion area.

12.    Edgerton and Miss Lunelle placed the wreath and stand near the Missing Man Table. A County representative photographed them with the wreath, reflecting County awareness of Edgerton's presence and attire before any issue was raised.

13.    Edgerton selected seating directly behind the reserved section, near the center aisle, to observe the ceremony.

14.    Members of the public, including veterans, approached him to greet him and request photographs, which he accommodated peacefully.

15.    As the ceremony began shortly before 10:00 a.m., Edgerton sat near the center aisle behind a group of Marine Corps League members.

16.    Following Col. Huszar's remarks, Terry Spann, U.S. Air Force Lieutenant Colonel (Ret.), commenced the Armed Forces Salute, beginning with the U.S.

Space Force. When the U.S. Army service song played, Edgerton—an Army veteran—stood at attention and sang along with surrounding attendees.

17.     Within moments, a group of uniformed security officers approached Edgerton and ordered him to leave. When he asked why— "right in the middle of singing my song?"—an officer responded, "That flag." When he sought clarification, the officer added, "Dressed as you are with that flag you are waving." The county officer also said "you and that flag are going."  No one else was removed from the event.

18.     The officers escorted Edgerton down the center aisle and out of the pavilion in view of numerous rows of veterans and families, interrupting the ceremony and subjecting him to public humiliation. The county security officers stated they had been ordered to remove him by County leadership because of how he was dressed and how he appeared.

19.     During this encounter, Edgerton explained that the flag is part of American military history, including displays alongside the Korean flag at Yori Castle during the Korean War and in the ticker-tape ceremony for General Douglas MacArthur's retirement, but the officers showed no interest in these facts.

20.     Edgerton's conduct at all times was peaceful and non-disruptive: he remained seated or standing at his place, interacted politely with those who approached him, and complied with officer directives. He did not block aisles, heckle speakers, interfere with the program, or violate any posted rule.

4

21.     Security personnel initially sought to have Edgerton walk a long distance off-site. Observers alerted them that he is a heart patient and that the exertion could precipitate a medical event. Only then did the county officers wait for a golf cart, during which Edgerton became weak and had difficulty climbing into the cart, walking, and later entering the vehicle.

22.     Even as he attempted to depart, other veterans approached to thank Edgerton for attending, expressed support for his participation, and conveyed embarrassment about how he was treated. His heart rate took time to return to normal, and he remained weak afterward.

23.     Edgerton has attended Veterans Day events nationwide for decades while wearing his uniform and carrying his historical flag and has never before been expelled for doing so.

24.     After recovering sufficiently, Edgerton recorded a contemporaneous account of the incident on video to preserve the evidence of what occurred on November 11, 2025.

25.     The County's actions ordering security to remove Edgerton because of his attire and flag reflect content and viewpoint-based exclusion of Edgerton's symbolic expression at an event opened to private participation by "veterans of all wars."

26.     The County's personnel acted pursuant to County policy, custom, or direction to exclude Confederate symbols from County ceremonies and/or to suppress expression.

27.    The County's conduct caused Edgerton emotional distress, humiliation, and physical strain and deprived him of his constitutional right to engage in protected expression at a public ceremony held in a public park.

## FIRST CLAIM (42 U.S.C. § 1983)

### First Amendment – Viewpoint Discrimination / Prior Restraint / (Against Hillsborough County)

28.    Edgerton realleges paragraphs 1–27.

29.    Edgerton's attire and flag were expressive conduct readily understood by observers. See *Texas v. Johnson, 491 U.S. 397* (1989); cf. *Spence v. Washington*, 418 U.S. 405 (1974).

30.    Veterans Memorial Park is, as to general public access, a traditional public forum, or at minimum a designated limited public forum opened for expressive activity by private citizens during the ceremony. See *Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37* (1983); *Hague v. CIO*, 307 U.S. 496 (1939).

31.    The County excluded Edgerton because of his viewpoint—honoring Confederate soldiers as veterans—while allowing other patriotic symbols and attire. Viewpoint discrimination is presumptively unconstitutional. See *Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819* (1995); *Matal v. Tam*, 582 U.S. 218 (2017).

32.    The County imposed a heckler's veto, suppressing Edgerton's speech out of anticipated audience disapproval rather than addressing any actual disruption through content-neutral means. See *Forsyth County v. Nationalist Movement, 505 U.S. 123* (1992).

33.     The exclusion was not narrowly tailored and not content-neutral; less restrictive, content-neutral measures were available to manage any crowd concerns.  The county punished him based on his viewpoint honoring Confederate history.

34.     By and through its officers, employees, and agents, and pursuant to its policies, customs, or final policymaker directives or ratification, the County violated the First Amendment.

35.     Public parks are recognized as traditional public forums, where individuals retain strong free speech rights; government restrictions on speech in these forums are subject to strict scrutiny, meaning they must be narrowly tailored to serve a compelling government interest and cannot discriminate based on viewpoint.  *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009).  The county ignored this axiomatic law in order to silence and remove plaintiff.

**ANTICIPATED DEFENSE AND REBUTTAL – GOVERNMENT SPEECH**

36.     The County may claim Edgerton's presence was part of the County government speech. That is incorrect. Under *Shurtleff v. City of Boston*, 596 U.S. 243 (2022), private participation in government-hosted events is private speech unless the government controls the message, the medium historically conveys government messages, and observers would attribute the speech to the government.  Plaintiff was seated in the public area and was treated in a discriminating manner and differently than all other members of the public based on his uniform.

37.     Here, the County invited the public, did not exercise editorial control over attendees' attire/flags, and a reasonable observer would attribute Edgerton's uniform/flag to him, not the County. Thus, his expression is private speech subject to the public-forum doctrine—not government speech. See also Pleasant *Grove City v. Summum*, 555 U.S. 460 (2009); *Walker v. Tex. Div., Sons of Confederate Veterans*, 576 U.S. 200 (2015).

## INJURY AND DAMAGES

38.     The County's actions caused Edgerton emotional distress, humiliation, physical exhaustion, and irreparable injury to his constitutional rights. Damages continue.

## PRAYER FOR RELIEF

39.     Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award:

A. Declaratory relief that the County violated Plaintiff's First Amendment right to free speech;

B. Permanent injunctive relief prohibiting the County from excluding attendees from County parks or County-sponsored public ceremonies based on viewpoint or anticipated audience hostility, and requiring adoption of content-neutral crowd-management and non-discrimination policies for such events;

C. Compensatory damages in an amount to be determined at trial;

D. Nominal damages for the violation of constitutional rights;

8

E. Costs and reasonable attorneys' fees under **42 U.S.C. § 1988;** and

F. Any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

**Dated**: November 30, 2025

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1st Ave
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com
Attorney for Plaintiff

9